IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **ROGER ISAACS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 2:13-CV-693-** |
| | ) | **MHT–PWG** |
| | ) | |
| **FELDER SERVICES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is an employment discrimination case. On September 24, 2013, Plaintiff Roger Isaacs ("Plaintiff") filed a three-count Complaint against Defendant Felder Services, LLC ("Defendant Felder" or "Defendant")[1] alleging that it discriminated against him based on his gender, subjected him to sexual harassment and a hostile work environment, and retaliated against him, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. (Doc. 1). This case is before the court on a motion for summary judgment by Defendant. (Doc. 27). The motion is briefed and is taken under submission without oral argument.

---

[1] On June 20, 2014, this court entered an order granting Defendant Arbor Springs Health and Rehabilitation Center, Ltd.'s motion to dismiss all claims against it with prejudice. (Doc. 15).

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.  The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.  *See* 28 U.S.C. § 1391.  On November 25, 2014, this matter was referred to the undersigned by U.S. District Judge Myron Thompson for disposition or recommendation on all pretrial matters.  (Doc. 26).  *See also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

For the reasons stated herein, the Magistrate Judge recommends that Defendant's motion for summary judgment is due to be **GRANTED**.

## I.   SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).[2]  The party asking for summary judgment always bears the

---

[2]  In 2007, Rule 56 was amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised

initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56 requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence [presented by the nonmoving party to rebut the moving party's evidence] is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

---

version.

3

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See *Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial.  *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the

nonmoving party on the issue in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case.  *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## II.    BACKGROUND AND STATEMENT OF RELEVANT FACTS[3]

---

[3] These are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.") (citation and marks omitted).  Indeed, the parties make arguments assuming the facts of this case for summary judgment purposes only.  Also, the "facts" set out herein are gleaned from the parties' evidentiary submissions but not from counsels' unsubstantiated statements in the parties' briefs.  "Statements by counsel in briefs are not evidence."  *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980).  *See also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).  That is not to suggest that the attorneys' versions of events are inaccurate; rather, it is simply to clarify that the "facts" in this Report and Recommendation are mined from the evidence of record.

Plaintiff is a gay male. (Doc. 29-1 at p. 13). He self-describes his voice as a "little bit higher on the pitch," which he attributes to an automobile accident when he was young. (Doc. 38-1 at p. 5). He has been married to Mr. Kenneth Ceasar since 2008. (Doc. 29-1 at p. 13).

Prior to his termination on August 7, 2012, Plaintiff was an employee of Defendant Felder, which is a company in the business of providing housekeeping, laundry, and dietary services to healthcare facilities. (Doc. 33-1 at p. 3). Defendant Felder hired Plaintiff as a dietician on February 27, 2012. (Doc. 29-1 at p. 10). Defendant Felder had a contract with Arbor Springs Health and Rehabilitation Center ("Arbor Springs"), a long-term care and rehabilitation facility in Opelika, Alabama, and Plaintiff was assigned to work at that location. (Doc. 33-1 at p. 3).

Defendant Felder employed other individuals who also worked at the Arbor Springs facility; however, none of the individuals was Plaintiff's supervisor and Plaintiff did not have an on-site supervisor. (Doc. 30-1 at p. 23). Plaintiff's primary supervisor, Debbie McGarvey, was responsible for supervising a regional territory that included, but was not limited to, the Arbor Springs location. (Doc. 30-1 at p. 23).

---

The facts set out *infra* that are based on disputed evidence are construed in a light most favorable to Plaintiff, and all reasonable inferences have been drawn from the evidence in his favor. That construction and deference ends where there is no evidence to support an allegation of fact. No findings of fact or credibility determinations are made from the evidence.

6

Ms. McGarvey visited the Arbor Springs facility on occasion. (*Id.*). While Defendant Felder, primarily through Ms. McGarvey, exercised supervisory authority over Plaintiff, there is no evidence of record that Defendant had any authority or control over the Arbor Springs employees who also worked at the Opelika facility.

Plaintiff regularly worked with nurses employed by Arbor Springs; however, there is no evidence of record that Arbor Springs was Plaintiff's employer or co-employer, or that any of Arbor Springs' employees had any control over the terms and conditions of his employment. (Doc. 30-1 at p. 19). In fact, this court previously held in its order dismissing Plaintiff's claims against Arbor Springs that Arbor Springs was not Plaintiff's employer. (Doc. 15).

Briefly after Plaintiff began working for Defendant Felder at Arbor Springs, supervisor McGarvey asked him to also work as a dietician at a facility in Florala, Alabama. (Doc. 30-1 at pp. 17-19). In addition to reporting to Arbor Springs, Plaintiff was required to drive to Florala approximately once every three weeks. (Doc. 30-1 at pp. 27). Plaintiff drove himself to Florala at least once, and sent reimbursement requests associated with that travel directly to Defendant Felder's headquarters in Mobile, Alabama. (Doc. 29-1 at p. 20; Doc. 30-1 at p. 28).

Shortly after Plaintiff received the Florala assignment, he was involved in an automobile accident and suffered injuries to his hip and ankle. (Doc. 29-1 at p. 14).

7

He went to the emergency room and though he was never admitted to the hospital, was given a cane for use when walking. (Doc. 29-1 at p. 15). Plaintiff thereafter told supervisor McGarvey that he could not comfortably sit in a car for long journeys. Plaintiff asked if the man he identified early in his employment as his "brother," but who in actuality was his husband, Kenneth Ceasar, could drive him to Florala. (Doc. 29-1 at p. 20-22).[4] Plaintiff also requested that he be allowed to lodge in the Florala area. (Doc. 33-8 at p. 3).

It is undisputed that supervisor McGarvey acquiesced to the requests that Mr. Ceasar be allow to drive Plaintiff on his work-related trips to Florala and that Plaintiff be allowed to seek reimbursement for his accommodations in the Florala area.[5] Plaintiff's practice was to travel to Florala the night before he was to report for work, work the next day, spend the night again, and return home the next morning. (Doc. 29-1 at p. 29). Plaintiff began submitting to Defendant Felder's headquarters reimbursement requests for his and Mr. Ceasar's travel-related expenses. (Doc. 38-1 at p. 18).

---

[4] Plaintiff states in his response to Defendant Felder's motion for summary judgment that Ceasar is, in addition to being his husband, his "brother in Jesus." (Doc. 38-1 at p. 12).

[5] The parties dispute whether McGarvey also gave Plaintiff permission to seek reimbursement for travel-related expenses incurred by Mr. Ceasar himself, including meals and accommodations. While Ms. McGarvey insists she did not authorize such reimbursement, Plaintiff testified in his deposition that she did so explicitly. (Doc. 33-8 at pp. 3-4; 38-1 at p. 15).

Plaintiff's mother typically visits him during the summer and stays for a period of months. Along with Mr. Ceasar, Plaintiff's mother began accompanying him on work-related trips to Florala. (Doc. 30-1 at p. 2). Plaintiff testified that Ms. McGarvey was aware that both his mother and Mr. Ceasar were traveling with him, but also testified that he "can't say" whether Ms. McGarvey authorized him to also seek reimbursement for his mother's travel-related expenses. (*Id.*).[6] Plaintiff submitted to Defendant Felder's headquarters reimbursement requests for money spent on two separate hotel rooms and meals for three separate individuals associated with travel in May and June 2012. (Doc. 29-1 at pp. 29-30; Doc. 30-1 at pp. 2-9). In some cases, Plaintiff sought reimbursement for lodging and meals for three people for a number of days. (Doc. 33-9 at pp. 3-5).

On July 23, 2012, Juli Bleicher, an administrative assistant employed by Defendant Felder who is responsible for receiving and reviewing expense reports submitted by various Felder employees, noticed that Plaintiff was seeking reimbursement for hotel accommodations and meals for three people for several dates in June 2012, and began an investigation into Plaintiff's reimbursement requests. (*Id*). Ms. Bleicher also found suspicious an expense reimbursement from June 3, 2012, wherein Plaintiff included a visitor pass from Eglin Air Force Base with a

---

[6] Ms. McGarvey insists that she did not authorize such reimbursement.  (Doc. 33-8 at p. 4).

request for reimbursement of fifty dollars.[7] Plaintiff testified that though he offered no explanation to Defendant Felder at the time he submitted the reimbursement request, he went to the Air Force base with his mom and Mr. Ceasar in order to "give her memories" of where he had been stationed from 1979-1983. (Doc. 30-1 at pp. 6-9). After the three had lunch at the base, they visited to the "private beach" that the Air Force reserves for the military. (Doc. 30-1 at p. 7). Plaintiff testified that because he had no receipt for their meal charges, he estimated that the three had spent fifty dollars, wrote that amount on the visitor pass, and submitted a reimbursement request for the same. (Doc. 30-1 at pp. 8-9).

On July 24, 2012, supervisor McGarvey e-mailed Plaintiff and told him to start sending her a copy of his expenses in the future so that she could approve them. (Doc. 38-2 at p. 3). Ms. Bleicher contacted Ms. McGarvey and asked if any of the expenses were authorized. (Doc. 33-9 at p. 4). Ms. McGarvey responded that Plaintiff was not due reimbursement for the additional accommodations and meals. (*Id.*; Doc. 33-8 at p. 4). On July 26, 2012, at approximately 2:00 p.m., Ms. Bleicher e-mailed Plaintiff and asked him to call her, as she wished to discuss the expenses. (Doc. 38-2 at p. 13; Doc. 33-9 at p. 5) She spoke with him *via* telephone on July 30, 2012. (*Id.*) Ms.

---

[7] The parties disagree regarding whether Plaintiff was attempting to receive reimbursement for a visitor pass (for which Eglin Air Force Base does not charge) or if he was attempting to receive reimbursement for meals he, Mr. Ceasar, and his mother consumed while on the Air Force base. (Doc. 30-1 at pp. 8-9; Doc. 33-9 at pp. 4-5).

Bleicher reported the results of her investigation to David Perez, Defendant Felder's

Human Resource Director. (Doc. 33-9 at p. 5).

On July 26, 2012, three days after Ms. Bleicher began her investigation into

Plaintiff's reimbursement requests, and on the same day and essentially the same

time[8] that Ms. Bleicher e-mailed him, Plaintiff attended a meeting at Arbor Springs

concerning quality assurance and weight loss. (Doc. 30-1 at p. 26).  The meeting

started at around 2:00 p.m., and he was the only one of Defendant Felder's employees

in the room.  (Doc. 30-1 at p. 27). All of the other nurses in the room were Arbor

Springs' employees. (*Id.*).  The meeting was led by Arbor Springs employee and

Associate Director of Nursing, Cheri Place.  (Doc. 30-1 at p. 28).

Though Plaintiff testified that he had worked with Ms. Place, and before the

meeting, had never had any problems with her, one of the subjects of the meeting was

whether or not employees were correctly filling out a form, and he and Ms. Place

began to disagree about the form's requirements.  (Doc. 30-1 at pp. 28-29; Doc. 31-1

at pp. 2). Plaintiff testified that at one point, Ms. Place asked someone to put tape

over his mouth. (Doc. 31-1 at p. 2).[9]  Plaintiff also testified that Ms. Place walked

---

[8] Plaintiff testified that the meeting began at approximately 2:00 p.m. (Doc. 30-1 at p. 27). The e-mail was sent at 2:02 p.m. (Doc. 38-2 at p. 13).

[9] Ms. Place denies making that comment. (Doc. 33-15 at pp. 3-4). Other meeting attendees deny Ms. Place made the comment. (Doc. 33-14 at p. 3-4; Doc. 33-16 at pp. 3-4).

close to him and "hiked her left leg up in the air like a dog —like a dog—male dog that pees, took her hand, placed it between her thighs where her crotch is at, and pretended to masturbate a penis." (Doc. 31-1 at p. 3).  Plaintiff testified that Ms. Place did so for at least thirty seconds. (*Id.*).[10] Finally, Plaintiff testified that after it was decided he was correct in his interpretation of the form that spurned the dispute, Ms. Place said something to the effect of "'Cupcake' was right." (Doc. 31-1 at p. 5).

Immediately after the meeting, Plaintiff went to see Brenda Guess, another Felder employee who worked at Arbor Springs, but who was not his supervisor, to tell her about the meeting. (Doc. 31-1 at p. 7). At Guess's suggestion, Plaintiff drafted a letter outlining what he contended occurred at the meeting and submitted it to Linda Hoffman, the associate director of Arbor Springs. (Doc. 31-1 at p. 8).  He forwarded the letter to supervisor McGarvey on July 31, 2012, which was five days after the incident occurred, as well as five days after Ms. Bleicher e-mailed him regarding his reimbursement requests.  (Doc. 31-1 at p. 9).  It was one day after Ms. Bleicher spoke with him *via* telephone regarding the reimbursement requests.  On that same date, Ms. McGarvey forwarded the letter to Human Resources Director Perez. (Doc. 33-8 at p. 4).

---

[10]Ms. Place denies performing the act as described by Plaintiff, but admits she did a "fist pump." (Doc. 33-15 at pp. 3-4). At least one other meeting attendee described Ms. Place's actions as the "Cheri dance." (Doc. 33-16 at p. 3). Another described the movement Ms. Place made with her leg and arm as one like Tiger Woods makes when he plays well. (Doc. 33-14 at p. 3).

A copy was also sent to another Felder supervisor, K. C. Komer. (Doc. 31-1 at p. 11-12).  Mr. Komer responded to Plaintiff on that same date and thanked Plaintiff for letting him know about the incident, and told him that if he felt uncomfortable at Arbor Springs, that he was free to leave with pay until the issue was resolved. (Doc. 31-1 at pp. 10-11). Mr. Komer also notified Plaintiff that he had forwarded Plaintiff's letter of complaint regarding the July 26, 2012 meeting to Human Resources Director Perez.  (Doc. 31-1 at pp. 10-11).  Isaacs left Arbor Springs and never returned. (Doc. 31-1 at p. 13).

Mr. Perez received the letter "a few days after Juli Bleicher brought to [his] attention the questionable expenses from the expense report submitted by [Plaintiff.]" (Doc. 33-1 at p. 4). Upon learning of the incident, Mr. Perez contacted Mark Traylor, the owner and administrator of the Arbor Springs facility, and asked him for additional information.  (*Id*.). Mr. Traylor conducted an investigation into Plaintiff's allegations. In addition to speaking with Plaintiff on July 31, 2012, between that date and August 1, 2012, Mr. Traylor interviewed the nurses who were in the subject meeting.  (Doc. 33-2 at p. 3). Mr. Traylor determined that the allegations were baseless and shared his findings with Defendant Felder's president, Kevin Muscat. (*Id*.).

While Mr. Perez was waiting on the results of Mr. Traylor's investigation, Ms.

Bleicher informed him of the results of her investigation into the reimbursement requests, having reached the conclusion that during May and June, Plaintiff had sought reimbursement for unauthorized expenses and had submitted false charges for reimbursement. (Doc. 33-1 at p. 5). Based on this information, Mr. Perez made the decision to terminate Plaintiff on August 7, 2012. (*Id.*). Mr. Perez met with Brenda Guess and Plaintiff on that date and accused Plaintiff of falsifying expense reports and presented him with a resignation letter. (Doc. 38-1 at p. 40). Plaintiff did not dispute the accusation, did not sign the resignation letter offered to him, and immediately left the room. (*Id.*).

At his deposition, Plaintiff testified that he is not claiming that he was discriminated against because he is a man, but that Cheri Places's comments and behavior were "possibly" based on her stereotyping him as a gay male and that she "assumed" he was gay. (Doc. 38-1 at pp. 35-36). Plaintiff testified that his allegations of sexual harassment in this action are solely based on "the incident with Cheri Place on July 26, 2012" and that no Felder employee ever did anything that he construed as sexual harassment. (Doc. 38-1 at pp. 34-35). He testified as follows:

Q.      Had Cheri Place ever made any kind of sexual advances towards you prior to that day?

A.      Not that I recall.

14

Q. Had any other Arbor Springs employee made any kind of sexual comments or advances towards you prior to that day?

A. Not that I recall.

Q. Had any Felder employees ever made any kind of sexual advances or sexual comments to you prior to that day?

A. Not that I recall.

Q. And even to this day no Felder employee ever did anything that you construed as sexual harassment; is that correct?

A. That's correct.

Q. It all relates to this incident with Cheri Place on the 26th?

A. That's correct.

(Doc. 38-1 at pp. 34-35).

On September 20, 2012, Isaacs filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964. (Doc. 1-1 at p. 1-2). On June 24, 2013, the EEOC issued Isaacs a notice of right to sue, and Isaacs timely filed his complaint in this case on September 24, 2013.(Doc. 1-1 at pp. 3-4).

## III.   DISCUSSION

There is only one defendant in this case—Defendant Felder. Neither Arbor Springs nor Arbor Springs employee Cheri Place is a party to this action. Plaintiff had only one employer—Defendant Felder. There is no evidence to support a finding that Arbor Springs was a co-employer of Plaintiff; in fact, this court has previously held it was not. (Doc. 15). Plaintiff had supervisors from only one company—Defendant Felder. There is no evidence to support a finding that Arbor Springs, or any employee of Arbor Springs, had any supervisory authority over him or had control over the terms and conditions of his employment. There is similarly no evidence to support a finding that Felder had any supervisory authority over employees of Arbor Springs.[11]

Nonetheless, by Plaintiff's own concession, his complaint of gender discrimination is entirely based on one incident involving one employee of Arbor Springs, over whom there is no evidence Defendant Felder had control. It is based on this one incident, and this incident alone, that Plaintiff contends Defendant Felder is liable for gender-based disparate treatment, hostile work environment, and retaliation. For the reasons explained hereinbelow, summary judgment is due to be granted as to all claims.

---

[11] The court is not making a separate finding on the issue of co-employment, and the parties have not asked it to do so.

A.      **Title VII gender-based disparate treatment**.

Count One of Plaintiff's Complaint is based on two theories. First, Plaintiff alleges that Defendant Felder terminated him based on his gender. (Doc. 1 at p. 5). Second, Plaintiff alleges that Defendant Felder terminated him on the basis that he is "effeminate in action tone of voice," and gay. (*Id.*) Each of these theories will be addressed, in turn.

1.      **Legal Principles**

Title VII prohibits discrimination with respect to an employee's "compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Specifically, the statute provides that it shall be unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race,   color, religion, sex, or national origin.

2 U.S.C. § 2000e-2(a)(1).

"To prove such discrimination, an individual may rely on either direct or circumstantial evidence." *Turner v. United Parcel Service*, 2014 WL 4458917, *7 (N.D. Ala. Sept. 10, 2014)(citing *Maynard v. Bd. Of Regents of Univ. of Fla. Dep't*

*of Educ.*, 342 F. 3d 1281, 1288 (11th Cir. 2003)).   "Direct evidence is evidence, which if believed, proves existence of fact in issue without inference or presumption." *Id.* (citing *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997)). "In the usual case, however, direct evidence is not present, and the plaintiff must rely on circumstantial evidence to prove discriminatory intent, using the framework established in *McDonnell Douglas Corp. v. Green*." *Id.* (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).

A plaintiff can establish a prima-facie case of gender-based disparate treatment by showing that: (1) he or she belongs to a protected class; (2) he or she was subjected to an adverse-employment action; (3) his or her employer treated similarly situated employees not of the protected class more favorably; and (4) that he or she was qualified for the job. *See Evans v. Books-A-Million*, 762 F.3d 1288, 1289 (11th Cir. 2014)(citing *Rice-Lamar v. City of Ft. Lauderdale, Fla*., 232 F.3d 836, 842-43 (11th Cir. 2000)).

> "Once the plaintiff meets its initial burden of alleging a *prima facie* case, the burden then shifts to the defendant to produce a non-discriminatory reason for the adverse employment action. Once the defendant has done so, the burden shifts back to the plaintiff to show that the proffered reason is a pretext for illegal discrimination."

*Parten v. Alabama Dept. of Tourism*, 2015 WL 1781588, *5 (M.D. Ala. April 20, 2015).

### 2. Plaintiff's termination on the basis of his gender.

Plaintiff alleges in his complaint that Defendant Felder discriminated against him based on his gender when it terminated him. Defendant argues that summary judgment is due to be granted in its favor because Plaintiff has failed to state a *prima facie* case for disparate treatment.

Plaintiff has offered no direct evidence of gender-based discrimination by Defendant Felder; therefore, the claim is analyzed under burden-shifting framework articulated above. For the purposes of its motion for summary judgment, Defendant Felder only disputes the third requirement of the *prima facie* case—that Plaintiff was treated less favorably than a comparable female employee.

"In order to satisfy this requirement, [Plaintiff] must present evidence that (1) a similarly situated individual (also known as a comparator) exists, and (2) the comparator received more favorable treatment than [he]." *Turner*, *supra*, at *10. "Summary judgment is appropriate if the plaintiff fails to show the existence of a similarly situated employee, and no other evidence of discrimination is present." *Id.* (quoting *Amos v. Tyson Foods, Inc.*, 153 Fed. App'x 637, 647 (11th Cir. 2005)).

In order for another employee to be deemed a comparator, Plaintiff must show that the employees are similarly situated in all relevant respects. *See id.* (quoting *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)(quoting,

19

in turn, *Holifield,* 115 F.3d at 1562)).  "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Id.* (quoting *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1091 (11th Cir. 2004)).

This court need not engage in a discussion regarding whether or not Plaintiff has provided evidence of comparators for the purposes of the *prima facie* case analysis because Plaintiff has offered no evidence of gender-discrimination by Defendant Felder. In fact, Plaintiff testified that none of Defendant Felder's employees ever did anything to him at any time that he would construe as sexual harassment. He also testified that his entire case is based on the one incident involving Arbor Springs employee Cheri Place, and there is no evidence that Defendant Felder had any authority or control over Cheri Place. Because there is simply no evidence of record that Defendant Felder discriminated against Plaintiff based on his gender, and Plaintiff has affirmatively testified to the same, summary judgment is due to be granted.

Assuming, for the sake of argument, that there was evidence on the record that Cheri Place was an employee of Defendant Felder or that Defendant Felder exercised control over Cheri Place such that her actions could potentially create liability for Defendant Felder, Plaintiff has identified no similarly-situated female employees of

Defendant Felder who were treated differently than he, much less those who could properly be described as comparators.

Plaintiff appears to identify Cheri Place as a comparator in his Complaint. (Doc. 1). He states that Defendant Felder terminated him while "taking no adverse employment action against Cheri Place (female)." (Doc. 1 at p. 5) It is undisputed that Cheri Place was not an employee of Defendant Felder; however, even if Defendant Felder had exercised control over the terms or conditions of her employment, Ms. Place, the assistant director of nursing, had a different job than Plaintiff, a dietician. She is thus, not "identical in all relevant respects" and is not a comparator for the purposes of Title VII analysis.

Ultimately, Plaintiff has identified no direct or circumstantial evidence suggesting that one of Defendant Felder's employees ever acted with gender-based discriminatory intent towards him such that a reasonable fact-finder could conclude that his termination was based on his gender. Even if he had, Plaintiff has identified no comparators from which the court could conclude he has established a *prima facie* case of gender discrimination.

Viewing the facts in a light most favorable to Plaintiff, he has failed to establish a *prima facie* case of disparate treatment; thus, the inquiry ends.[12]  *See Nix*

---

[12] There is considerable briefing regarding whether or not Defendant's proffered reason for terminating Plaintiff; i.e., that he falsified expense reports and submitted reimbursement requests

*v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1187 (11th Cir. 1981). Summary

judgment is due to be granted as to this portion of the disparate treatment claim.

### 3.    Termination of the Plaintiff based on his non-conformity to gender stereotypes and sexual orientation.

Plaintiff alleges in his complaint the following:

> The Defendan[t] further intentionally discriminated against [Plaintiff] on the basis that he is effeminate in action tone of voice. [Plaintiff] is in a long-term, committed, same-sex relationship. [Plaintiff] does not portray nor identifies himself as effeminate or as having any female characteristics.

(Doc. 1 at p. 6).

Defendant argues that Plaintiff's claim for discrimination based on his tone of

voice is a thinly-veiled claim for discrimination based on sexual orientation, and that

because such a claim is not cognizable under Title VII, it is due summary judgment

on the claim. The court is not persuaded that the gender non-conformity claim is a

camouflaged claim for discrimination based on sexual orientation; rather, giving all

deference to Plaintiff at this juncture, it appears he has stated two distinct claims, one

for discrimination based on gender non-conformity and another based on sexual

orientation.  Each will be taken in turn.

---

for unauthorized expenses, was pretexual.  The court does not reach this issue in light of
Plaintiff's failure to meet his threshold burden of demonstrating a *prima facie* case.

### i.     Gender non-conformity.

Plaintiff alleges in his Complaint that Defendant Felder discriminated against him on the basis that he has an effeminate voice.  He testified that his voice is "a bit higher on the pitch," and that "it's obvious [his] voice is different than a majority of male factors." (Doc. 38-1 at p. 35).  Plaintiff claims that Ms. Place treated him differently because of his effeminate voice.

Such a claim is theoretically cognizable. As articulated in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989), *superseded on other grounds by statute* as stated in *Burrage v. U.S.*, 134 S. Ct. 1881 (2014), an employee who is subjected to an adverse employment action because of his or her employer's animus towards an exhibition of gender non-conforming behavior may have a claim for gender discrimination under Title VII. Generally, gender stereotyping is concerned with characteristics "readily demonstrable in the workplace," such as "behaviors, mannerisms, and appearances." *Burrows v. College of Central Florida*, 2015 WL 4250427, *10 (M. D. Fla. July 13, 2015)(citing *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 763 (6th Cir. 2006)).

However, Plaintiff's own testimony belies the claim. He does not allege that anyone, but for Ms. Place, over whom there is no evidence Defendant Felder had authority or control, treated him differently or discriminated against him based on the

self-described tone or pitch of his voice. Again, Plaintiff has identified no direct or circumstantial evidence suggesting that one of Defendant Felder's employees ever acted with discriminatory intent towards him, such that a reasonable fact-finder could conclude that his termination was based on his non-conformity to gender stereotypes. Summary judgment is due to be granted as to this claim.

### ii. Sexual orientation.

Plaintiff argues in his brief in opposition to the motion for summary judgment that he "maintains the sexual harassment, intentional discrimination, and hostile work environment experienced while employed is based upon sexual orientation and sex." (Doc. 38 at p. 11). He further describes Cheri Place's actions as "targeted directly towards [Plaintiff] being a gay male." (Doc. 38 at p. 14).

Sexual orientation is neither included in nor contemplated by Title VII. "Although the Eleventh Circuit has not addressed this issue, every court that has done so has found that Title VII ... was not intended to cover discrimination against homosexuals." *Evans v. Georgia Regional Hospital*, 2015 WL 5316694 (S.D. Ga. Sept. 10, 2015). *See, e.g., Anderson v. Napolitano*, 2010 WL 431898, *4 (S.D. Fla. Feb. 8, 2010)("The law is clear that Title VII does not prohibit discrimination based on sexual orientation."); *Mowery v. Escambia Cnty. Utils. Auth.*, 2006 WL 327965, *9 (N.D. Fla. Feb. 10, 2006)("[C]ase law throughout the circuits consistently holds

24

that Title VII provides no protection from discrimination based on sexual orientation.").[13]

While discrimination based on one's sexual orientation is deplorable in any context, including but not limited to the workplace, it is simply not within the ambit of Title VII. The Second Circuit addressed this issue in *Simonton v. Runyon*, 232 F.3d 33 (2d. Cir. 2000). It explained:

> "There can be no doubt that the conduct allegedly engaged in by [Plaintiff's] co-workers is morally reprehensible whenever and in whatever context it occurs, particularly in the modern workplace. Nevertheless, as the First Circuit recently explained in a similar context, 'we are called upon here to construe a statute as glossed by the Supreme Court, not to make a moral judgment.' *Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 259 (1st Cir. 1999). When interpreting a statute, the role of a court is limited to discerning and adhering to legislative meaning. The law is well-settled in this circuit and in all others to have reached the question that [Plaintiff] has no cause of action

---

[13] Plaintiff argues in his brief in opposition to Defendant Felder's motion for summary judgment that discrimination based on one's sexual orientation is also sex discrimination because it "necessarily involves discrimination based on gender stereotypes." Plaintiff cites in support thereof a recent EEOC decision in Appeal No. 0120133080 (July 15, 2015). This opinion is not binding on the court. Presented with the exact same EEOC decision, the court in *Burrows v. The College of Central Florida*, 2015 WL 5257135 (M.D. Fla. Sept. 9, 2015), held as follows:

> Although the EEOC's decision is relevant and would be considered persuasive authority, it is not controlling. *See Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141-42, 97 S. Ct. 401, 50 L.Ed.2d 343 (1976), *superseded by statute on other grounds* recognized in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 88-89, 103 S. Ct. 2890, 77 L.Ed.2d 490 (1983). Until the Supreme Court or Eleventh Circuit recognizes the opinion expressed in the EEOC's decision as the prevailing legal opinion, the Court declines to reconsider in light of the EEOC's decision.

*Id*. at *2. (emphasis in original). This court agrees.

under Title VII because Title VII does not prohibit harassment or discrimination because of sexual orientation."

*Id*. at 36.

Because discrimination based on one's sexual orientation is not actionable under Title VII, summary judgment is due to be granted.

### B.        Hostile work environment.

Plaintiff claims that he was subjected to sexual harassment by Cheri Place on one occasion, and that the July 26, 2012 event, which consisted of her referring to him in a meeting as "Cupcake," and telling someone to put tape over his mouth, and during that same meeting, simulating a male dog urinating and simulating male masturbation,[14] rose to the level of a hostile work environment. Defendant provides evidence disputing that the above events occurred as described by Plaintiff, and argues there is no evidence of harassment severe or pervasive enough to give rise to a hostile work environment claim.

To prove a hostile work environment, a plaintiff must show:

(1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily

---

[14] Plaintiff does not contend that Cheri Place, or any other employee of Arbor Springs or Defendant Felder, ever made sexual advances towards him. (Doc. 38-1 at pp. 34-35).

abusive working environment; and (5) a basis for holding the employer liable.

*Reeves v. C. H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010)(quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999)(*en banc*).

Title VII is violated when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)(quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

Not all offensive comments or actions constitute sexual harassment.

Although Title VII's prohibition of sex discrimination clearly includes sexual harassment, Title VII is not a federal "civility code." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1000–02, 140 L.Ed.2d 201 (1998) ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations."); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) ("A recurring point in these opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " (internal citation omitted)); *Meritor*, 477 U.S. at 67, 106 S.Ct. 2399 ("[N]ot all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII.").

*Mendoza, supra*, at 1245.

Assuming, for the sake of argument, that Defendant Felder could be held liable for the actions of Ms. Place on July 26, 2012, and also assuming that Ms. Place's actions constituted an isolated act of unlawful harassment,[15] there is no evidence that Plaintiff's workplace was "permeated" with "pervasive" or "severe" sexual harassment sufficient to create a hostile work environment.

Plaintiff's own testimony provides evidence in contradiction. He testified that prior to July 26, 2012, no employee of Arbor Springs, including Cheri Place, or employee of Defendant Felder, ever subjected him to sexual harassment. Plaintiff also testified that his allegations of sexual harassment in this action are solely based on "the incident with Cheri Place on July 26, 2012," and that no Felder employee ever did anything that he construed as sexual harassment. (Doc. 38-1 at pp. 34-35). Plaintiff has not presented evidence of pervasive harassment. *See*, *e.g.*, *Faragher v. City of Boca Roton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84, 144 L.Ed.2d 662 (1998) ("[t]easing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment" and the courts seek to filter out complaints of "sporadic use of abusive language, gender-related jokes, and occasional teasing."); *McCann v. Tillman*, 526

---

[15] The recommendation contained herein is not and should not be construed as a finding that the alleged actions of Cheri Place were unlawful.

F.3d 1370, 1379 (11th Cir.2008) (noting that "sporadic and isolated" conduct, even if offensive, is not enough).

The conduct described by Plaintiff is also not so "severe" as to create a hostile work environment. Courts nationwide have found conduct far less offensive than that alleged herein to fall short of creating a hostile work environment. It is not necessary to cite all of these cases or describe their lurid details; a sampling will suffice. *See*, *e.g.*, *Murphy v. City of Aventura,* 383 Fed. Appx. 915, 918 (11th Cir. 2010)(holding that the defendant's use of terms like "slut," "whore," "bitch," "hooker," and unquestionably sex-based remarks, made over the course of over three years, were neither severe nor pervasive to create a hostile work environment)*; Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430–31 (7th Cir.1995) (holding that in a seven-month period, nine sexually offensive incidents, including a gesture to the plaintiff intended to suggest masturbation, though distasteful and adolescent, did not constitute a hostile environment).

Taken as a whole, and construing the evidence in the light most favorable to Plaintiff, this evidence fails to give rise to a hostile work environment claim. Summary judgment is due to be granted as to this claim.[16]

---

[16] It should also be noted that after Plaintiff made Defendant Felder aware of the alleged harassment, it allowed him to leave Arbor Springs until an investigation had been conducted and continued to pay him during the pendency of the investigation.

## C.    Retaliation.

Plaintiff argues that Defendant Felder terminated him in retaliation for filing a complaint. "Retaliation is a separate violation of Title VII." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 586 (11th Cir. 2000).  Section 704(a) of Title VII of the Civil Rights Act of 1964 provides protection for employees who oppose or participate in activities to correct an employer's discriminatory practices.

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  Congress thus recognized two predicates for retaliation claims:  one for opposition to discriminatory practices, and another for participation in protected activity.

> Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." . . . And, under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

*Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (citations omitted).

Proving that an employer retaliated against an employee is rarely a straightforward undertaking.  Stated differently, a plaintiff's case generally rests entirely on circumstantial evidence, because direct evidence of an employer's intent or motivation often is either unavailable or difficult to acquire.  *See Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1071 (3rd Cir. 1996) (*en banc*).  Such is the case here as the parties rely only on circumstantial evidence. Federal courts typically evaluate the sufficiency of circumstantial evidence using some variant of the well-known framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).  As Justice O'Connor observed in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), "the entire purpose of the *McDonnell Douglas prima facie* case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by."  490 U.S. at 271 (O'Connor, J., concurring).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to show, through admissible evidence, a legitimate, non-retaliatory reason for the adverse employment action.  *Burdine*, 450 U.S. at 255.  If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact

rationally to conclude that the employment decision had not been motivated by [retaliatory] animus," *id*. at 257, the presumption of retaliation created by the *prima facie* case "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10.   The burden then shifts to the plaintiff to "come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely pretext for retaliation.   *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804).

The Supreme Court recently clarified a plaintiff's burden and held that, as to the causation standard for a retaliation claim, a plaintiff must "show that the [adverse employment action] would not have occurred in the absence of — that is, but-for — the defendant's conduct." *University of Texas Southwestern Med. v. Nassar*, 570 U.S. ---, 133 S. Ct. 2517, 2525 (2013).[17]   In other words, a plaintiff has to "establish that his or her protected activity was a but-for cause [and not just a motivating factor] of the alleged adverse employment action by the employer." *Nassar*, 133 S. Ct. at 2534.

---

[17] There is a split among various federal courts as to whether it is appropriate to impose the *Nassar* standard at the *prima facie* or pretext stage of analysis.  The conflict need not be resolved or even addressed here.

"A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir.2001)).

Plaintiff does not allege with regard to his retaliation claim that he made a charge, testified, assisted, or participated in any manner in an EEOC investigation, proceeding, or hearing. Indeed, his EEOC charge was filed subsequent to his termination. Plaintiff's retaliation claim is rather, based on his opposition—in the form of the letter dated June 26, 2012 which he submitted to Arbor Springs, and later forwarded to Defendant Felder—to Defendant Felder's "discriminatory conduct, sexual harassment, and other factors contributing to a hostile work environment." (Doc. 1 at p. 8).

For summary judgment purposes, the court assumes that Plaintiff has established a *prima facie* case of retaliatory discharge. The sole reason for this assumption is the temporal proximity between his July 31, 2012 transmission of the letter regarding the events of June 26, 2012 and his August 7, 2012 termination.

Defendant Felder has met its burden of articulating a legitimate, non-discriminatory reason for terminating Plaintiff.  Defendant Felder provides evidence that Plaintiff was terminated for submitting reimbursement requests for unauthorized expenses (travel expenses, including meals and accommodations, incurred by his husband and mother) and for falsifying expense reports (submitting what Defendant Felder believed to be a request for reimbursement for a visitor pass to Eglin Air Force Base, for which there is no charge).

Thus, it is Plaintiff's burden to come forward with evidence sufficient to permit a reasonable factfinder to conclude those reasons were not the real reasons for his termination, but merely pretext for retaliation. Plaintiff cannot demonstrate pretext unless it is shown both that the reasons were false *and* that retaliation was the real reason. See *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See also Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir.2000) (stating the plaintiff must meet each proffered reason "head on," and cannot succeed by simply disputing the wisdom of the employer's proffered reasons).

Plaintiff has offered enough evidence, in the form of his deposition testimony, for there to be a dispute of fact regarding whether Plaintiff received prior authorization to seek reimbursement for travel expenses incurred by his husband and whether Plaintiff was seeking reimbursement of a false visitor pass to Eglin Air

34

Force. However, Plaintiff has been unable to come forward with any evidence that disputes Defendant Felder's evidence that he was not authorized to seek reimbursement for travel expenses, including, but not limited to a second, separate hotel room, for his mother. Plaintiff testified that he "could not say" whether he received authorization to seek reimbursement for the expenses incurred by his mother. Plaintiff has, therefore, not met his burden of submitting evidence demonstrating that one of three reasons for his termination was false.

He has also failed to provide evidence that the real reason for his termination on this basis was, in fact, retaliation. Plaintiff relies on the temporal proximity of his transmission of the letter dated July 26, 2012, which he transmitted to Abor Springs on that same date, but did not submit to his employer until July 31, 2012, and his August 7, 2012 termination. First of all, temporal proximity alone does not suffice to show causation. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir.2006) (stating when an employer contemplates an adverse action before an employee engages in protected activity, temporal proximity between the protected activity and a later adverse action does not "suffice to show causation"). This notwithstanding, when the evidence on the record is analyzed, even construing all evidence in light most favorable to Plaintiff, Plaintiff's argument is unpersuasive.

There is undisputed evidence on the record that Juli Belcher, administrative assistant for Defendant Felder, began her investigation into Plaintiff's May and June 2012 expense reports and reimbursement requests on July 23, 2012. The subject meeting did not occur until July 26, 2012. There is also undisputed evidence on the record that Juli Belcher sent Plaintiff an email on the same date of the meeting giving rise to the complaint, and at the same time Plaintiff contends the meeting began, asking Plaintiff to call her regarding his expenses. The e-mail is of record, and Plaintiff has come forward with no evidence to dispute this fact.

Plaintiff's sole argument is that Ms. Belcher did not present her findings to the company until after the subject meeting occurred.  This argument is ultimately unpersuasive. Plaintiff has presented no evidence calling into question that the investigation into the acts for which Defendant ultimately contends he was terminated began days before the meeting of which he complained.  Plaintiff cannot rely on the temporal proximity of his complaint to his termination alone, especially in light of the time-line evidence of record, to demonstrate evidence of pretext so as to defeat Defendant's motion for summary judgment. While he was undoubtably terminated a short period after he lodged a complaint, there is insufficient evidence to overcome Defendant's proffer of a legitimate, non-discriminatory reason for his termination.

Therefore, construing all the facts and evidence in the light most favorable to Plaintiff, Plaintiff has failed to demonstrate the existence of pretext, and Defendant's Felder's motion for summary judgment as to this claim is due to be granted.

Summary judgment is also due to be granted on the basis that Plaintiff has failed to demonstrate that retaliation was the but-for cause of his termination, as Defendant correctly notes. Indeed, it is Plaintiff's position that he was terminated because he is male, because of his voice does not conform to gender stereotypes, and because he is gay, in addition to his retaliation claim.

Accordingly, viewing the facts in a light most favorable to him, Plaintiff cannot establish that retaliation was the "but-for" cause of his termination. *See Butterworth v. Laboratory Corp. of America Holdings*, 581 Fed. Appx. 813, 817 (11th Cir. 2014)(holding that without establishing but-for causation, plaintiff failed to adequately support her claim for TitleVII retaliation). As Plaintiff cannot meet the onerous *Nassar* standard to maintain a retaliation claim under Title VII, Defendant Felder's motion for summary judgment is due to be granted.

## IV.    CONCLUSION AND RECOMMENDATION

For the reasons stated herein, the Magistrate Judge **RECOMMENDS** that Defendant Felder's motion for summary judgment (Doc. 27) is due to be **GRANTED**.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **October 22, 2015.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 8th day of October, 2015.

/s/ Paul W. Greene
United States Magistrate Judge