IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| ROGER ISAACS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:13cv693-MHT |
| | ) | (WO) |
| FELDER SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

This is an employment-discrimination case.
Plaintiff Roger Isaacs alleges that defendant Felder
Services, LLC, his former employer, (1) discriminated
against him (by firing him) on the basis of his sex,
gender non-conformity, and sexual orientation; (2)
subjected him to sexual harassment which created a
hostile-work environment; and (3) retaliated against
him for complaining about that harassment, all in
violation of Title VII of the Civil Rights Act of 1964,
as amended, 42 U.S.C. § 2000e et seq.

This lawsuit is now before the court on the
recommendation of the United States Magistrate Judge

that summary judgment should be granted in favor of Felder Services on all three claims. See Report and Recommendation (doc. no. 41) (hereafter "R&R"). There are no objections to the recommendation. After an independent and de novo review of the record, the court concludes that the magistrate judge's recommendation should be adopted, albeit for somewhat different reasons. See Fed. R. Civ. P. 59(b)(3). These reasons are set out below.

## 1. Facts

Because the facts are set out in detail in the R&R, they are summarized only briefly here.

Isaacs is a gay man. For about six months, he was an employee of Felder Services, which provides services to healthcare facilities (Isaacs worked as a dietician). Felder Services had a contract with Arbor Springs Health and Rehabilitation Center in Opelika, Alabama, and Isaacs was assigned to work there.

Isaacs worked with employees of both Felder Services and Arbor Springs, but had no on-site supervisor. Instead, his boss was Debbie McGarvey, a regional supervisor for Felder Services. There is no evidence to suggest that Felder Services exercised authority over Arbor Springs employees at the facility or that anyone at Arbor Springs exercised authority over Isaacs. This court has previously dismissed Isaacs's claims against Arbor Springs, ruling that it was not Isaacs's employer or co-employer. See Isaacs v. Felder Servs., LLC, No. 2:13-CV-693-MEF, 2014 WL 2806128 (M.D. Ala. 2014)(Fuller, J.).

McGarvey asked Isaacs to work at another facility in Florala, Alabama, once every three weeks. Because Isaacs had been injured in a car accident, he asked for, and was given, permission for a man he identified as his brother but who was actually his husband to drive him to Florala, and for the two to stay overnight there. (There is a dispute as to whether McGarvey authorized Isaacs to seek reimbursement for expenses

incurred by his husband.) Isaacs began staying in Florala, with his husband, the nights before and after he was to work in the facility there; he submitted the expenses they both incurred for reimbursement by Felder Services.

In addition, Isaacs brought his mother along on some of his trips to Florala, and he submitted multiple reimbursement requests for meals and lodging for her. Isaacs offers no evidence--even in the form of his own deposition testimony--to suggest that these expenses were authorized. Finally, Isaacs submitted a visitor pass from an air force base, on which he had handwritten "$ 50." Although he gave no explanation for the request when it was submitted (visitor passes are free), he later testified that he had taken his husband and mother there; because they received no receipt for their meal, he estimated that it had cost $ 50 and wrote that amount on the visitor pass.

On July 23, 2012, Juli Bleicher, an administrative assistant at Felder Services, began an investigation

**4**

into Isaacs's reimbursement requests after noticing that he had submitted requests for three people and finding the visitor pass suspicious.  The next day, July 24, McGarvey sent Isaacs an e-mail instructing him to send her copies of future expenses for approval; McGarvey also spoke with Bleicher, and informed her that Isaacs was not due reimbursement for meals and lodging for his mother or husband.  On July 26, at 2:00 p.m., Bleicher sent Isaacs an e-mail asking him to call her to discuss his expense reports.

At exactly the same time on July 26 as Bleicher e-mailed Isaacs, Isaacs attended a staff meeting at Arbor Springs, the events of which apparently form the sole basis for his allegations of discrimination. Isaacs was the only Felder Services employee present, and the meeting was run by the associate director of nursing, Cheri Place.  According to Isaacs (and as disputed by both Place and the other attendees), after he and Place began to disagree about whether staff members were correctly completing a form, Place asked

5

someone to put tape over Isaacs's mouth, approached Isaacs and made an allegedly masturbatory hand gesture, and acknowledged that Isaacs's reading of the form was correct by saying, "Cupcake was right."  After the meeting concluded, Isaacs submitted a letter describing what had occurred to the associate director of Arbor Springs.

At some point between July 26 and 31, Bleicher first brought the issue of Isaacs's questionable expenses to the attention of David Perez, the director of human resources at Felder Services.  Isaacs called Bleicher back on July 30, and they discussed the disputed expenses.

On July 31, Isaacs forwarded his complaint letter to McGarvey; the same day, she forwarded the letter to Perez, and to K. C. Komer, another supervisor.  Komer contacted Isaacs that day: he thanked Isaacs for letting him know about the incident and told him that, if he felt uncomfortable at Arbor Springs, he was free

to leave with pay until the issue was resolved.  Isaacs left Arbor Springs and never returned.

When Perez received the letter, he contacted Mark Traylor, the owner-administrator of Arbor Springs, and asked him to interview the Arbor Springs employees who were present at the meeting with Place.  These interviews were concluded on August 1.  Before Perez received the results of Traylor's investigation, Bleicher reported to him that Isaacs had submitted false charges and sought reimbursement for unauthorized expenses.  Then, Traylor reported to Felder Services (directly to its president, Kevin Muscat) his finding that Isaacs's allegations were baseless.

On August 7, Perez and Muscat decided to terminate Isaacs's employment based on the improper reimbursement requests.


## 2.  Discrimination

Isaacs claims that Felder Services terminated him because he is male.  The recommendation concludes that

7

the court "need not engage in a discussion regarding whether or not Plaintiff has provided evidence of comparators for the purposes of the prima-facie-case analysis because Plaintiff has offered no evidence of gender-discrimination by Defendant Felder," given that his claim revolves around the harassment he allegedly suffered at the hands of Place, and Place was not an employee, or otherwise under the control or authority, of Felder Services.  R&R at 20.  The court takes issue with this reasoning.  Had Isaacs identified a relevant female comparator, the fact that she was not terminated would have constituted just the sort of circumstantial evidence of discrimination by his employer that his claim now lacks.  Hence, the court cannot reject this claim without considering whether Isaacs has offered comparator evidence.

However, the court agrees with the recommendation of summary judgment on this claim because Isaacs has indeed failed to identify a relevant female comparator. The individual he identifies, Place herself, was not an

employee of--and therefore not subject to discipline by--Felder Services. Moreover, her alleged misconduct (sexual harassment) was entirely different from the misconduct that Felder Services asserts formed the basis of its decision to fire Isaacs (seeking reimbursement for unauthorized expenses). See Holifeld v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) ("In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.").

With respect to Isaacs's claim that Felder Services discriminated against him on the basis of his gender non-conformity, the record does not support the recommendation's finding that Isaacs "does not allege" that anyone over whom Felder Services had authority or control discriminated against him based on the tone of his voice. Compare R&R at 23-24 with Complaint (doc. no. 1) at 5 ("The Defendant's [sic] further

intentionally discriminated against Isaacs on the basis that he is effeminate in action [and] tone of voice."). However, the court adopts the recommendation's reasoning to the extent it concludes that "Plaintiff has identified no direct or circumstantial <u>evidence</u> suggesting that one of Defendant Felder's employees ever acted with discriminatory intent towards him, such that a reasonable factfinder could conclude that his termination was based on his non-conformity to gender stereotypes."  R&R at 24 (emphasis added).

Finally, Isaacs claims that he was discriminated against based on his sexual orientation.  The court rejects the magistrate judge's conclusion that "[s]exual orientation discrimination is neither included in nor contemplated by Title VII."  R&R at 24. In the Eleventh Circuit, the question is an open one. <u>See</u> <u>Evans v. Ga. Reg'l Hosp.</u>, No. CV415-103, 2015 WL 5316694, at *2 (S.D. Ga. Sept. 10, 2015) (Smith, J.) ("[T]he Eleventh Circuit has not addressed this issue...."); <u>see also</u> <u>Muhammad v. Caterpillar Inc.</u>, 767

F.3d 694 (7th Cir. 2014) (amending a previously issued opinion to omit language stating that discrimination on the basis of sexual orientation is not actionable under Title VII).

This court agrees instead with the view of the Equal Employment Opportunity Commission that claims of sexual orientation-based discrimination are cognizable under Title VII. In EEOC Appeal No. 0120133080, 2015 WL 4397641, at *4-*10 (July 16, 2015), the Commission explains persuasively why "an allegation of discrimination based on sexual orientation is necessarily an allegation of sex discrimination under Title VII." Id. at *5. Particularly compelling is its reliance on Eleventh Circuit precedent, id. at *7:

> "Title VII ... prohibits employers from treating an employee or applicant differently than other employees or applicants based on the fact that such individuals are in a same-sex marriage or because the employee has [or is interested in having] a personal association with someone of a particular sex. Adverse action on that basis is, 'by definition,' discrimination because of the employee or applicant's sex. Cf. Parr v.

11

> _Woodmen of the World Life Ins. Co._,
> 791 F.2d 888, 892 (11th Cir. 1986)
> ('Where a plaintiff claims
> discrimination based upon an
> interracial marriage or association,
> he alleges, by definition, that he has
> been discriminated against because of
> _his_ race [in violation of Title
> VII].').''

_See also_ Andrew Koppelman, "Why Discrimination Against Lesbians and Gay Men is Sex Discrimination," 69 N.Y.U. L. Rev. 197, 208 (1994) ("If a business fires Ricky ... because of his sexual activities with Fred, while th[is] action[] would not have been taken against Lucy if she did exactly the same things with Fred, then Ricky is being discriminated against because of his sex.").

To the extent that sexual orientation discrimination occurs not because of the targeted individual's romantic or sexual attraction to or involvement with people of the same sex, but rather based on her or his perceived deviations from "heterosexually defined gender norms," this, too, is sex discrimination, of the gender-stereotyping

variety.    EEOC   Appeal   No.   0120133080,   2015   WL
4397641,   at   *7-*8   (citation   omitted);   <u>see</u>   <u>also</u>
<u>Latta v. Otter</u>,   771   F.3d   456,   486   (9th   Cir.   2014)
(Berzon,   J.,   concurring)   ("The   notion   underlying
the   Supreme   Court's   anti-stereotyping   doctrine   in
both   Fourteenth   Amendment   and   Title   VII   cases   is
simple,   but   compelling:   '[n]obody   should   be   forced
into   a   predetermined   role   on   account   of   sex,'   or
punished   for   failing   to   conform   to   prescriptive
expectations   of   what   behavior   is   appropriate   for
one's   gender.   <u>See</u>   Ruth   Bader   Ginsburg,   'Gender   and
the   Constitution,'   44   U.   Cin.   L.   Rev.   1,   1   (1975).
In   other   words,   laws   [and   employment   practices]
that   give   effect   to   'pervasive   sex-role
stereotype[s]'   about   the   behavior   appropriate   for
men   and   women   are   damaging   because   they   restrict
individual   choices   by   punishing   those   men   and   women
who   do   not   fit   the   stereotyped   mold.   <u>Nev. Dep't of</u>
<u>Human Res. v. Hibbs</u>,   538   U.S.   721,   738   (2003).").

13

However, this claim fails for the same reason Isaacs's other discrimination claims fail: He has offered no direct or circumstantial evidence to suggest that the decision of Felder Services to fire him was based on his sexual orientation.

### 3. Hostile-Work Environment

The court agrees with the magistrate judge's reasoning with respect to this claim.

### 4. Retaliation

The magistrate judge's reasoning with respect to this claim is adopted except to the extent that it suggests that "[s]ummary judgment is <u>also</u> due to be granted on the basis that Plaintiff has failed to demonstrate that retaliation was <u>the</u> but-for cause of his termination" because he has also taken the "position that he was terminated because he is male, because [] his voice does not conform to gender stereotypes, and because he is gay, in addition to his

retaliation claim." R&R at 37 (emphasis added). There may be multiple wrongful, actionable but-for causes of a termination. See Zann Kwan v. Andalex Group LLC, 737 F. 2d 834, 846 n.5 (2d Cir. 2013) (explaining, in an employment-discrimination case, that "a plaintiff's injury can have multiple 'but-for' causes, each one of which may be sufficient to support liability"). Moreover, even if the multiple but-for causes that Isaacs alleged were in fact inconsistent--again, they are not--"[l]itigants in federal court may pursue alternative theories of recovery, regardless of their consistency," and without the articulation of one theory prejudicing the litigant's entitlement to relief on another. Allstate Ins. Co. v. James, 779 F.2d 1536, 1540 (11th Cir. 1986); see also Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

An appropriate judgment will be entered.

DONE, this the 29th day of October, 2015.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE